## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

)
SHANDEX CORPORATION                              )
                                                 )
                    Plaintiff,                   )
                                                 )
          v.                                     )          Court No. 20-00203
                                                 )
UNITED STATES OF AMERICA;                        )
OFFICE OF THE UNITED STATES TRADE                )
REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S.       )
TRADE REPRESENTATIVE; U.S. CUSTOMS &             )
BORDER PROTECTION; MARK A. MORGAN, U.S.          )
CUSTOMS & BORDER PROTECTION ACTING               )
COMMISSIONER,                                    )
                                                 )
                    Defendants.                  )
_____)

## COMPLAINT

Plaintiff, Shandex Corporation ("Shandex"), by and through its attorneys, alleges and states

as follows:

### Summary

1.      This action concerns Defendants' prosecution of an unprecedented and unlimited

trade war affecting more than $500 billion in imports from the People's Republic of China. This

Complaint challenges Defendants' unlawful escalation of that trade war through the imposition of

a third round and a fourth round of tariffs on products covered by "List 3" and "List 4A." *Notice

of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology

Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of

Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology

Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2020), revising and

increasing the additional duty from 10 percent to 15 percent in the Defendants' earlier

announcement of the same covered products under List 4A, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 3,741 (Jan. 22, 2020) (further revising the additional duty for List 4A, as announced in the August 30, 2020 public notice from 15 percent to 7.5 percent).

2.     The Trade Act of 1974 ("Trade Act") did not confer unlimited authority on Defendants to impose duties or tariffs on a foreign country to eliminate the unfair act, policy, or practice of a foreign country.  19 U.S.C. § 2411.  Rather, it limits the Defendants' power both substantively, by requiring that the action be "equivalent in value to the burden or restriction being imposed by that country on United States commerce", and procedurally, by setting the time in which to act.  19 U.S.C. § 2411(a)(1) and (a)(3); 19 U.S.C. § 2414.  Any modification or termination of an action taken under Section 2411 of the Trade Act must be limited to circumstances when:

(A) any of the conditions described in section 2411(a)(2) of this title exist,

(B) the burden or restriction on United States commerce of the denial rights, or of the acts, policies, and practices, that are the subject of such action has increased or decreased, or

(C) such action is being taken under section 2411(b) of this title and is no longer appropriate.

19 U.S.C. § 2417(a)(1).  There are limits to the Defendants' authority under the statute that must be preserved and that the Defendants surpassed in this case.

3.     The United States Trade Representative ("USTR") commenced an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411).  Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to

determine what action to take, if any, within 12 months after initiation of that investigation.  But USTR failed to issue List 3 and List 4A within that window.

4.      The "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) does not give the Defendants complete freedom to do whatever USTR chooses under the guise of eliminating China's unfair intellectual property practices either.  Section 307 of the Trade Act does not permit USTR to expand the scope of the imposition of tariffs to other imports from China for reasons unrelated to the acts, policies, or practices that USTR originally investigated under Section 301 of the Trade Act.  Rather, the "modification" authority shall be contained within the limits of the authority vested under Section 301 of the Trade Act.

5.      Defendants, however, promulgated the List 3 and List 4A duties and subsequently modified the duties of List 4A in response to China's retaliatory duties and other unrelated issues.

6.      Even if USTR deemed the existing tariffs "no longer appropriate", as it also did here, the Trade Act permits USTR only to modify or terminate the actions it has already taken within the constraints of Section 301 of the Trade Act.

7.      The arbitrary way in which Defendants implemented the List 3 and List 4A tariff actions also violates the Administrative Procedure Act ("APA").  The APA prohibits agency actions that are "arbitrary", "capricious", or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).  USTR (1) failed to provide sufficient opportunity for comment for each modification that Section 307 of the Trade Act mandates, by, *inter alia*, requiring interested parties to submit affirmative *and* rebuttal comments on the same day for its imposition of additional duties under List 3 and depriving the public of the statutorily-required review and comment opportunities for its modification of additional duties under List 4A on August 30, 2020, and on January 22, 2020; (2) failed to consider relevant factors when promulgating the tariffs, *e.g.,*

undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair intellectual property policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made.  Indeed, despite receiving over 6,000 comments for List 3 and over 3,000 comments for the initial imposition for List 4A, USTR said absolutely nothing about how those comments shaped its promulgation of List 3 and List 4A.  USTR, subsequent to its initial imposition of additional duties on List 4A, made at least two additional modifications to the duties for List 4A but did not bother providing the public the comment and review opportunity for each of these modifications.  USTR's actions – its preordained promulgation and modification of List 3 and List 4A -- violate the APA.

8.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to List 3 and List 4A.

## JURISDICTION

9.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

10.      Plaintiff Shandex is a privately-owned company founded in February 2010 that is located in Fort Lee, New Jersey.  Shandex operates in the concrete building products industry (*i.e.*, brick stone and related construction materials) and imports related construction materials (*i.e.*, fasteners, anchor bolts, drywall screws, *etc.*).  The products it imports from China are used in a broad range of U.S. construction projects.  Shandex employs 16 individuals in the United States

and generates approximately $46 million in revenue annually. Shandex has made numerous entries of building and construction products classified under these HTSUS subheadings: 7217.20.3000; 7216.91.00; 7804.11.00; 7307.91.10; 7314.42.00; 7314.31.50; 7314.20.00; 7326.20.00; 3923.90.00; 7317.00.75; 7317.00.65; 7317.00.55; 7326.90.86; 9401.90.35; 9401.79.00; 7318.15.60; 3920.10.00; 2827.20.00; 2827.31.50; 5603.93.00; 5407.20.00; 7318.15.20; 7318.22.00; 3925.90.00; 7313.00.00; 4819.10.00; 7316.00.00; 7217.20.30; 7217.10.80; 3926.90.99; 7216.10.00; 8305.20.00; 6305.33.00; 7318.16.00; 7217.10.50; 6307.90.98; and, 7217.90.10, all of which are subject to the additional *ad valorem* duties under List 3 and List 4A.

11.     Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12.     The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4A.

13.     Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR. In these roles, he made numerous decisions regarding List 3 and List 4A.

14.     Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 3 and List 4A.

15.     Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under List 3 and List 4A.

## STANDING

16.    Shandex, has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 and List 4A adversely affected and aggrieved Shandex because it was required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

17.    A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

18.    The instant action contests actions taken by Defendants that resulted in List 3 and List 4A. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019)); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2020); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 3,741 (Jan. 22, 2020). Plaintiff's claims accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register*; List 4A was published in the *Federal Register* on August 20, 2019. *Id.* Plaintiff has therefore timely filed this action.

## RELEVANT LAW

19.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. 19 U.S.C. § 2411(b) and (c)(1)(B).

20.     Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. 19 U.S.C. § 2414(a)(1)(B) and (2)(B).

21.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(B) and (C).

22.     Section 307 of the Trade Act further provides: "Before taking any action under paragraph (1) to modify or terminate any action taken under section 2411 of this title, the Trade Representative shall consult with the petitioner, if any, and with representatives of the domestic industry concerned, and shall provide opportunity for the presentation of views by other interested persons affected by the proposed modification or termination concerning the effects of the modification or termination and whether any modification or termination of the action is appropriate." 19 U.S.C. § 2417(a)(2).

23.     The APA prohibits agency actions that are "arbitrary" or "capricious", "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right", or "without observance of procedure required by law". 5 U.S.C. § 706(2)(A), (C) and (D).

24.     The APA requires agencies to comply with the various procedural requirements when issuing new "substantive" or "legislative" rules.   5 U.S.C.  § 553. These procedural requirements generally include a "notice of proposed rule making . . . published in the Federal Register," and an opportunity for "interested persons" to submit "written data, views, or arguments." 5 U.S.C. § 553(b) and (c); *Parkdale Int'l, Ltd. v. United States*, 31 C.I.T. 1229, 1356 (Aug. 8, 2007).  An agency is required to consider the comments it receives and publish a final rule together with a "statement of . . .  basis and purpose" explaining the rationale for its decision. 5 U.S.C. § 553(c); *Parkdale* Int'l, 31 C.I.T.  at 1356.  Exceptions, however, exist for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," often called "interpretive rules." 5 U.S.C.  § 553(b).

## PROCEDURAL HISTORY

### I.     USTR's Investigation

25.     The current U.S.-China trade war grew from a narrow dispute. On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology,* 82 Fed. Reg. 39,007 (Aug. 17, 2017).  According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

26.     Four days later, on August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer,

intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 82 Fed. Reg. 40,213 (Aug. 24, 2017).

27.     Seven months later, on March 22, 2018, USTR released a report announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (March 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.  USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

28.     On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *Section 301 Fact Sheet* (March 22, 2018), *available at* https://ustr.goviabout-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25 percent *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.; see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 13,099 (March 27, 2018) (President Trump's directive).

## II.   Lists 1 & 2

29.     Between April and August 2018 (*i.e.*, within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by Lists 1 and 2.

30.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 14,906, 14,907 (April 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action,*

*USTR Releases Proposed Tariff List on Chinese Products* (April 3, 2018), *available at* https https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

31.    On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25 percent *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

32.    At the same time it finalized List 1, USTR announced that it intended to impose a 25 percent *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id.* at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

33.    On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25 percent *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III.    List 3 and List 4A

34.    As soon as USTR announced the results of its investigation in March 2018, tensions between the governments of China and the United States escalated dramatically.  In the months that followed, Defendants wildly expanded the scope of the tariffs imposed under Section 301 of the

Trade Act to cover imports worth more than $500 billion — ten times the amount deemed "commensurate" with the findings of USTR's original investigation. Defendants did so for reasons untethered to the unfair practices that USTR had investigated:  China's tit-for-tat countermeasures and a hodgepodge of grievances related to China's role on the world stage.

A.     **List 3**

35.     Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States. In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (April 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

36.     When USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *See, e.g.,* Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods,* THE HILL (June 15, 2018), *available at* https://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods. ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.")

37.     Following through on his warning, on June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products

from China with an estimated trade value of $200 billion — despite USTR having not yet implemented List 1 and List 2.  President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

38.    Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harm identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

39.    Despite these warnings from Defendants, China retaliated by imposing 25 percent *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25 percent tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

40.     About a week after China imposed its first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 33,608, 33,608 (July 17, 2018).  USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id.* at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id.* at 33,608.

41.     In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id.* at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.; see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did

not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id.*

42.     USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative#:~:text=Washington%2C%20DC%E2%80%93%20U.S.%20Trade%20Representative%20Robert%20Lighthizer%20today,on%20approximately%20%2434%20billion%20worth%20of%20Chinese%20imports.*

43.     That same day, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTnimp/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.,* @realDonaldTrump, Twitter (July 20, 2018,  8:43  AM  EDT),  https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump,       TWITTER      (July      20,      2018,      8:51      AM      EDT), https://twitter.com/realDonaldTrump/status/1020290163933630464;         @realDonaldTrump, TWITTER       (July        25,        2018,        7:20        AM        EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504?ref_src=twsrc%5Etfw%7Ct wcamp%5Etweetembed%7Ctwterm%5E1022079127799701504%7Ctwgr%5Eshare_3&ref_url=

https%3A%2F%2Fdailycaller.com%2F2018%2F07%2F25%2Ftrump-china-vicious-trade-

tweet%2F;   @realDonaldTrump,   Twitter   (July   25,   2018,   7:01   AM   EDT),

https://twitter.com/realDonaldTrump/status/1022074452999225344 .

44.    Within days of these statements, Ambassador Lighthizer announced that, considering

China's retaliatory duties, USTR would propose to increase the additional duty from 10 percent to 25

percent *ad valorem*.   Rather than addressing the practices that USTR investigated pursuant to Section

301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers,

farmers,   ranchers   and   businesses."   OFFICE   OF   THE   UNITED   STATES   TRADE

REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301

Action* (Aug.   1,   2018), *available   at*   https://ustr.gov/about-us/policy-offices/press-office/press-

releases/2018/august/statement-us-trade-representative.

45.    Shortly thereafter, USTR, at the direction of President Trump, formally proposed

"raising the level of the additional duty in the proposed supplemental action from 10 percent to 25

percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant

to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual

Property, and Innovation,* 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).   USTR also set new dates for a

public hearing over six days ending on August 27, 2018. *See id.; see also* OFFICE OF THE UNITED

STATES REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff" List* (Aug.

17,   2018)   (modifying   hearing   schedule), *available   at*   https://ustr.gov/about-us/policy-

offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

46.    At the same time, USTR adjusted the deadlines for the submission of written

comments, setting September 6, 2018 — less than a month later — as the new deadline for both

*initial and rebuttal* comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating

from its past practices, prevented both USTR and the public from considering initial comments at the hearing and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id.*

47.    Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sept. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once again, the President made clear that China's response to the $50 billion tariff action (*i.e.*, List 1 and List 2 duties) motived his decision, and he immediately promised to proceed with "phase three" of the plan –an *additional $267 billion tariff action* – "*if* China takes retaliatory action against our farmers or other industries." *Id.*

48.    Following the President's announcement, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3". 83 Fed. Reg. at 47,974. USTR imposed a 10 percent *ad valorem* tariff that was set to rise automatically to 25 percent on January 1, 2019. *Id.*  USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses.  *Id.*

49.    As legal support for its action, USTR for the first time referenced Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action,

subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted).  USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP policies referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

50.    In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25 percent. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 7,966 (March 5, 2019).

51.    The trade negotiations ultimately fell apart. In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25 percent, effective either May 10, 2019 or June 1, 2019, depending on the day of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation,* 84 Fed. Reg. 20,459 (May 9, 2019) *("List 3 Rate Increase Notice"); see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice,* 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did not seek public comment but rather simply announced that the increase would occur. *Id.*

52.     Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 29,576 (June 24, 2019). Shandex did not file any exclusion requests and paid the additional duty rate for all of its imported products covered under List 3 under the HTSUS subheadings listed in Paragraph 10 of this complaint.

53.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, except for the limited number of products for which USTR extended its originally granted exclusions from the List 3 duties. *See, e.g., Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.     List 4A**

54.     On May 17, 2019, USTR announced its intent to proceed with another round of "proposed modification" of the actions it had taken against China pursuant to Section 301. This proposed action covered product on China with an annual trade value of approximately $300 billion,

which "covers essentially all products not currently covered by the action in this investigation." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 22,564, 22,564 (May 17, 2019).   The proposed modification and request for public comment included a fourth list of tariff subheadings (known as List 4A) that would be subject to an additional duty of 25 percent *ad valorem.   Id.*   USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

55.     Once again, USTR requested public comments on proposed List 4 and held a public hearing. *Id.* Nearly 3,000 comments were submitted on USTR Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001   Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, only seven days before the deadline for submitting written comments by June 17, 2020, and witnesses testimony was limited to five minutes at the hearing which was also held on June 17. After the hearing, USTR allowed only seven days in which interested parties could file any post-hearing rebuttal comments. *Id.*

56.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4A tariffs would become effective September 1, 2019 at a rate of 10 percent *ad valorem.* @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realDonaldTrump/status/1156979446877962243 *(*noting a "small additional

Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

57.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10 percent *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. List 4B would impose a 10 percent *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* at 43,305. As with past determinations, USTR again did not describe, address, categorize, discuss or refute any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses for this modification.  *Id.*  Further, it noted that no public comment and review opportunity will be provided for future modifications; instead, "the Trade Representative intends to take into account the extensive public comments and testimony previously provided in response to the May 17 notice." *Id.*

58.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id. at* 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*  The notice also indicated that

in a round of late July 2019 meetings between the United States and China, China "remained unwilling to return to the specific commitments it had offered in prior rounds of negotiations." *Id.* It further noted that the Treasury Department had determined that "China has taken concrete steps to devalue its currency", an issue which was not even part of the scope of the original Section 301 investigation by USTR.

59.   On August 30, 2019, USTR published notice announcing its intent to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10 percent to 15 percent. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, ""China responded by announcing further tariffs on U.S. goods"" and "threatened additional retaliation." *Id.* at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

60.   In modifying the earlier List 4A duties in this notice, USTR provided no opportunity for public review and comment, and instead only "takes in account the public comments and testimony" previously received in the May 17 notice. *Id.*, at 45,823.

61.   The List 4A tariffs went into effect on September 1, 2019, as scheduled.

62.   On October 18, 2019, USTR announced on its web site that it would begin accepting tariff exclusion requests on October 31, 2019 for imports from China subject to the additional 15 percent (List 4A). https://ustr.gov/issue-areas/enforcement/section-301-investigations/section-301-china/china-section-301-tariff.   Exclusion requests were accepted on USTR Docket 2019-0005 from October 31, 2019 until January 31, 2020. *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's*

*Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*. 84 Fed. Reg. 57144 (October 24, 2019). Shandex did not file any exclusion requests and has paid the additional duty rate for all of its imported products covered under List 4A under HTSUS subheadings listed in Paragraph 10 of this complaint.

63.     On December 18, 2019, after negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B, which would have been effective on December 15, 2019. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also indicated that it would soon provide separate notice reducing the tariff rate applicable to products covered by List 4A. *Id.* On January 22, 2020, USTR issued notice that the rate of additional duty on List 4A products would be reduced from 15 percent to 7.5 percent on February 14, 2020. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 3,741 (Jan. 22, 2020).

64.     Again, in promulgating this modification, USTR offered no opportunity for public comment and review. *Id.* It simply noted that "to modify the action being taken in this investigation takes into account the extensive comments and testimony previously provided in connection with the August 20 modification". *Id.*

65.     On January 15, 2020, the United States and China signed a "Phase One" deal that had been negotiated in December 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-

and-china-reach. *See also* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-signing-u-s-china-phase-one-trade-agreement/.

66.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.   Although the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under their limited trade deal. *See, e.g.,* @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

67.     Paragraphs 1 through 66 are incorporated by reference.

68.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

69.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4A tariffs.

70.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 and List 4A on any such determination.

71.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B) and (2)(B). USTR's action giving rise to List 3 and List 4A occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

72.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

73.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *expand the scope of* tariff actions that are no longer "appropriate," but rather only to modify or terminate such actions within the constraints of the authority empowered by Section 301 of the Trade Act.

74.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

**COUNT TWO**

**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

75.     Paragraphs 1 through 66 are incorporated by reference.

76.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

77.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and List 4A and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

78.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

79.     Defendants also promulgated List 3 and List 4A in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4A.

80.     Defendants failed to provide the opportunity for comments for its modification of List 4A demanded by the Trade Act and are thus "without observance of procedure required by law."

81.     Defendants' promulgation of List 3 and List 4A and modification of List 4A violated the APA's notice and comment requirements. The APA defines a "rule" as an "agency statement of general or particular applicability and future effect designed to implement . . . or

prescribe . . . policy." 5 U.S.C. § 551(4); *see also Am. Frozen Food Inst., Inc. v. United States*, 18 CIT 565, 573, 855 F. Supp. 388, 396 (1994) ("[S]ubstantive or legislative-type rules are those which relate to and change the standards of conduct, and have force of law."). A "rule making," in turn, includes not only the initial issuance of new rules but also the repeal or amendment of existing rules. 5 U.S.C. § 551(5). Under 5 U.S.C. § 553, all "legislative rules" must go through a mandatory notice and comment period process to be valid. Exceptions to the notice and comment requirement exist, however, for "interpretative rules" and "general statements of policy." 5 U.S.C. § 553(b). If a rule "adopts 'a new position inconsistent with' an existing regulation, or effects 'a substantive change in the regulation,' notice and comment are required." *U.S. Telecom Ass'n v. FCC.*, 365 U.S. App. D.C. 149, 400 F.3d 29, 35 (D.C. Cir. 2005) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995)) (emphasis omitted); *Tennessee Hosp. Ass'n v. Azar*, 908 F.2d 1029, 1042 (6th Cir. 2018) ("If an agency attempts to issue a legislative rule without abiding by the APA's procedural requirements, the rule is invalid.").

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court

(1)   declare that Defendants' actions resulting in tariffs on products covered by List 3 and List 4A are unauthorized by, and contrary to, the Trade Act;

(2)   declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4A in violation of the APA;

(3)   vacate the List 3 rulemaking and List 4A rulemaking;

(4)   order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3 and List 4A;

(5)   permanently enjoin Defendants from applying List 3 and List 4A against Plaintiff and collecting any duties from Plaintiff pursuant to List 3 and List 4A;

(6)      award Plaintiff its costs and reasonable attorney fees; and grant such other and

further relief as may be just and proper.

Respectfully submitted,

/s/ David M. Schwartz
David M. Schwartz
Meixuan (Michelle) Li

Thompson Hine LLP
1919 M Street, NW, Suite 700
Washington, D.C. 22036

*Counsel to Shandex Corporation*

Dated: September 17, 2020

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

September 17, 2020, copies of Plaintiff's Summons and Complaint were served on the following

parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel U.S.
Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s/ David M. Schwartz